IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RESTORATION RISK RETENTION GROUP, INC.,

                Plaintiff,

v.                                                                                              OPINION & ORDER

DAVE ROSS and                                                                   16-cv-296-jdp
TRADES CREDENTIALING UNIT,

                Defendants.

---

      This case concerns a Wisconsin statute that requires dwelling contractors to demonstrate financial responsibility by having either a bond or an insurance policy issued by a company "authorized to do business in this state." Wis. Stat. § 101.654(2). Plaintiff Restoration Risk Retention Group, Inc., contends that the state has recently adopted an unlawful interpretation of the phrase "authorized to do business in this state." Restoration Risk contends that the state's new interpretation is wrong as a matter of statutory interpretation, and that it violates the federal Liability Risk Retention Act (LRRA), which preempts most state regulation of risk retention groups. According to Restoration Risk, the state's interpretation of the Wis. Stat. § 101.654(2) effectively ends its Wisconsin business, which is insuring Wisconsin Servepro franchisees.

      Before the court are Restoration Risk's motion for injunctive relief, Dkt. 2, Restoration Risk's motion for partial summary judgment, Dkt. 25, and defendants' motion for partial judgment on the pleadings, Dkt. 14. The three motions all turn on the same two questions: is the state's interpretation of Wis. Stat. § 101.654(2)(a) erroneous; and if not, is it preempted by the LRRA? Restoration Risk has done business in Wisconsin since 2006, and defendants offer no explanation at all for the recent re-interpretation of the phrase

"authorized to do business in this state." But the Seventh Circuit has already decided that a similar Wisconsin statute does not violate the LRRA, even though it prevented a category of out-of-state risk retention groups from writing insurance in Wisconsin. *See Ophthalmic Mut. Ins. Co. v. Musser*, 143 F.3d 1062 (7th Cir. 1998). Restoration Risk has valid arguments based on cases from other circuits, but this court must follow *Ophthalmic*, which leads the court to conclude that the state's interpretation is lawful. The court will grant defendants' motion for partial judgment on the pleadings and deny Restoration Risk's motion for partial summary judgment and its motion for injunctive relief.

BACKGROUND

The court draws the facts from the complaint, Dkt. 1, which is appropriate for defendants' motion for judgment on the pleadings. The court views the facts pleaded in the complaint in the light most favorable to Restoration Risk as the non-moving party. *Buchanan-Moor v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). The material facts are largely undisputed, so even if the court were to evaluate the case based on evidence submitted by Restoration Risk in support of its motion for partial summary judgment, the material facts would be the same.

The court begins with some historical background. The regulation of insurance is a matter generally left to the states, and most insurance companies must be certified by the regulating agency in each state in which they wish to offer insurance. But federal law affords some nationwide regulation of risk retention groups (RRGs), which are, in essence, insurance cooperatives through which members can self-insure. In 1981, Congress enacted the Products Liability Risk Retention Act (PLRRA) to encourage the formation of risk retention groups for

manufacturers who needed product liability insurance at affordable rates. In 1986, Congress enacted the Liability Risk Retention Act (LRRA) to expand the benefits of the PLRRA to other companies in need of insurance. Under the LRRA, an RRG must be chartered in at least one state, where it will be subject to that state's insurance regulation. But, once chartered in its home state, the RRG can offer insurance to its members in other states, subject to certain registration and disclosure requirements. The LRRA preempts most state regulation of RRGs, but with exceptions that turn out to be decisive in this case.

Turning to the facts of this case, Restoration Risk is an RRG that provides general liability to its members, Servpro franchises, which clean and restore buildings damaged by floods, fires, and the like. Restoration Risk is chartered in Vermont. Since 2006, it has registered with the Wisconsin Office of the Commissioner of Insurance (OCI) and provided insurance to Servpro franchisees in Wisconsin. In Wisconsin, Servpro franchisees are regulated as dwelling contractors under Wis. Stat. § 101.164. To obtain dwelling contractor certifications, Servpro franchisees must obtain annual certificates of financial responsibility from the Trades Credentialing Unit of the Wisconsin Department of Safety and Professional Services (the Department). Wis. Stat. § 101.654(1)(a). To do so, they must provide proof that they have either:

> 1. A bond endorsed by a surety company authorized to do business in this state of not less than $5,000 [or]
>
> 2. A policy of general liability insurance issued by an insurer authorized to do business in this state.

§ 101.654(2)(a). Since 2006, Restoration Risk insurance policies have satisfied the insurance requirement: the Department has consistently found that Restoration Risk is "an insurer authorized to do business in this state." That is, until last year.

3

On April 30, 2015, the Department notified a Servpro franchisee that it could not issue a certificate of financial responsibility because its insurer, Restoration Risk, "has not been authorized to do business in Wisconsin," as required by § 101.654(2)(a). Dkt. 1-2, at 2. The Department explained that an insurer must have a certificate of authority from OCI to be "authorized to do business" in the state. Dkt. 1-5, at 2. (The parties are not entirely clear about what it means to have a certificate of authority from OCI, but the court infers that it would require an insurer to submit, at least in part, to Wisconsin's insurance regulations.) Restoration Risk had registered as an RRG with OCI since 2006, but it had never received a certificate of authority from OCI. The Department's new interpretation of "authorized to do business in this state" means that Servpro franchisees must acquire insurance from an insurer other than Restoration Risk, which means that Restoration Risk is out of business in Wisconsin.

In May 2016, Restoration Risk filed suit against the Department and its secretary, Dave Ross, challenging defendants' new interpretation of Wis. Stat. § 101.654(2)(a) as a violation of the LRRA and its rights to due process under the U.S. Constitution. The court has jurisdiction under 28 U.S.C. § 1331 because the case raises questions of federal law.

ANALYSIS

All agree that Restoration Risk is an RRG that is regulated primarily by the LRRA, and that the LRRA preempts most state regulation of RRGs. The parties' motions present two core disputes, both of which are questions of law. First, the court must determine whether the Department's interpretation of Wis. Stat. § 101.654(2)(a) is erroneous as a

matter of Wisconsin state law. Second, if it is not erroneous, the court must determine whether it is preempted by the LRRA.

**A. The interpretation of Wis. Stat. § 101.654(2)(a)**

The court begins with Department's interpretation of the phrase "an insurer authorized to do business in this state." The Department now interprets this phrase narrowly to mean "an insurer authorized by the OCI." But according to Restoration Risk, the phrase should be interpreted more broadly to include RRGs that have registered with the OCI, even though they have not, strictly speaking, been authorized by the OCI. This is a question of state law; no Wisconsin court has yet interpreted this phrase.

The interpretation of a statute is generally a question of law for the court. But under Wisconsin law, an agency's interpretation of a statute may be entitled to one of three levels of deference: great weight deference, due weight deference, or no deference. *Racine Harley-Davidson, Inc. v. Wis. Div. of Hearings & Appeals*, 2006 WI 86, ¶ 12, 292 Wis. 2d 549, 717 N.W.2d 184. Great weight deference is given to long-standing agency interpretations of statutes the agency administers when it uses "its expertise or specialized knowledge" to form an interpretation that provides "uniformity and consistency in the application of the statute." *Id.* ¶ 16. The Department's interpretation would be entitled to great weight deference if it were one of long standing. But it has recently changed, so great weight deference is not appropriate.

A somewhat closer question is whether the Department's interpretation should be afforded due weight or no deference at all. No deference is given to agency interpretations when (1) the agency does not have experience or expertise in interpreting the statute; (2) the issue is one of first impression; or (3) the agency's position has been so inconsistent that it

5

provides no real guidance. *Id.* ¶ 19. The Department has experience in interpreting Wis. Stat. § 101.654, and the issue is not one of first impression because the Department has long issued certificates of financial responsibility to dwelling contractors. The Department's interpretation has changed recently. But this departure from a long-standing construction is not so inconsistent that it provides no real guidance, because one can clearly predict the Department's position in future cases. *See County of Dane v. Labor & Indus. Review Comm'n*, 2007 WI App 262, ¶ 17, 306 Wis. 2d 830, 744 N.W.2d 613 (holding that an agency's interpretation is "so inconsistent" only when it changes position so frequently that people cannot "reasonably predict the view the agency will adopt in future cases" or "how the agency might apply the rule to their facts").

Due weight deference is given to agency interpretations of statutes the agency administers "when the agency has some experience in an area but has not developed the expertise that necessarily places it in a better position than a court to make judgments regarding the interpretation of the statute." *Racine Harley-Davidson*, 2006 WI 86, ¶ 18. The Department administers § 101.654 and it has considerable experience setting financial responsibility requirements. Ordinarily, one would expect the Department to be in a better position than the court to make judgments about the meaning of the state's financial responsibility statutes. But the Department's recent change in position has not been explained to the court (or elsewhere as far as the record shows). The court concludes that only due weight deference is appropriate. Under due weight deference, the court would sustain the Department's interpretation if it is not contrary to the statute's clear meaning, unless the reviewing court concludes that there is a more reasonable interpretation. *Id.* If the

6

alternative interpretation is merely equally reasonable, the agency's interpretation will stand. *Id.* ¶ 20.

When interpreting a statute, Wisconsin courts first consider the plain meaning of the statutory language. *State ex rel. Kalal v. Circuit Court for Dane Cty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. They read the statute in context, considering closely-related statutes. *Id.* ¶ 46. When the language is clear, Wisconsin courts look no further. *Id.* But when it is ambiguous, they turn to extrinsic sources of interpretation such as the legislative history. *Id.*

Section 101.654(2)(a) refers to "an insurer authorized to do business in this state." The plain language in isolation is ambiguous, because it does not make clear what entity must authorize the insurer. Wisconsin statutes do not expressly define "authorized insurer" as that term is used in Chapter 101, which defines the powers and duties of the Department of Safety and Professional Services. But in the context of insurance regulation, Wis. Stat. § 600.03(48) defines an "unauthorized insurer" as "any insurer not holding a valid certificate of authority to do an insurance business in this state." This definition is technically only applicable to chapters 600 to 655 (which cover insurance regulations), but the Wisconsin statutes offer no other explanation or definition that would inform the court's understanding of what it means to be an authorized insurer. So, if the meaning of "authorized insurer" were drawn from the insurance code, § 101.654(2)(a) would require an insurance policy from an insurer holding a valid certificate of authority from OCI.

Wis. Stat. § 101.654 was created by 1993 Wis. Act 126. This Act does not specifically explain the meaning of "authorized to do business in this state." But the Act committed the development of rules for certifying financial responsibility to a "contractor certification

7

council," as provided in Wis. Stat. § 101.625. Wis. Stat. § 101.654 has been amended several times, but none of the amendments affect or inform the meaning of the phrase "authorized to do business in this state."

But that phrase also appears in Chapter 655, relating to health care liability insurance, and in that context, the phrase has meaningful legislative history. Wis. Stat. § 655.23 concerns the financial responsibility requirements of Wisconsin health care providers. Section 655.23(3)(a) used to require health care providers to have an insurance policy "issued by an insurer authorized to do business in this state or by an unauthorized nondomestic insurer if the commissioner has found the insurer to be reliable and solid." § 655.23(3)(a) (1989). The legislature amended the statute in 1989 to allow only an insurance policy "issued by an insurer authorized to do business in this state." § 655.23(3)(a) (1990). OCI immediately interpreted the amended statutory language to mean that RRGs and other out-of-state insurers without certificates of authority from OCI were not "authorized to do business in this state." *See Ophthalmic*, 143 F.3d at 1065.

Four years after the amendment of § 655.23(3)(a), 1993 Wis. Act 26 created Wis. Stat. § 101.654 using the phrase "an insurer authorized to do business in this state," the same phrased used in § 655.23(3)(a). In 1993, an RRG without a certificate of authority from OCI was not "an insurer authorized to do business in this state," for purposes of the insurance code. It is reasonable to infer that the legislature in 1993 intended the phrase "an insurer authorized to do business in this state" to mean the same thing in the new financial responsibility statute applicable to dwelling contractors. Had the legislature had meant for § 101.654(2)(a) to include uncertified out-of-state RRGs, the legislature could have made that clear.

8

In fact, the legislature later expressly allowed uncertified out-of-state RRGs to issue health liability insurance. In 2015, the legislature again amended § 655.23 by creating § 655.23(3)(am), which states that for the purposes of § 655.23(3)(a) only, an RRG that has not been issued a certificate of authority by OCI is nevertheless authorized to do business in Wisconsin if it meets several additional financial responsibility requirements. § 655.23(3)(am) (2016). Thus, in the context of health liability insurance, the 2015 Wisconsin legislature believed that an RRG without a certificate of authority from OCI was not "authorized to do business in this state," unless it met additional financial responsibility requirements. The legislature has not made a parallel amendment to the financial responsibility requirements for dwelling contractors. Thus, it appears that the legislature intended the phrase "an insurer authorized to do business in this state" in § 101.654(2)(a) to exclude RRGs without certificates of authority from OCI.

The Department's current interpretation of "an insurer authorized to do business in this state" in § 101.654(2)(a) is consistent with the statute's plain meaning, and it fits well with the legislative history of a similar statute in the insurance code. Plaintiffs offer, at best, an equally reasonable interpretation of the statutory language. Under these circumstances, where the Department's interpretation is entitled to due deference, the Department's interpretation stands.

B.  Preemption under the LRRA

The point of the LRRA is to facilitate the formation of RRGs by easing the requirements of state insurance regulation. There is no question that the Department's interpretation makes it more difficult for out-of-state RRGs to write insurance in Wisconsin,

which raises the question of whether the Department's interpretation of § 101.654(2)(a) would be preempted by the LRRA.

The LRRA preempts many state laws and regulations that would hinder the ability of RRGs to operate nationwide, including those that discriminate against RRGs and their members:

> Except as provided in this section, a risk retention group is exempt from any State law, rule, regulation, or order to the extent that such law, rule, regulation, or order would—
>
> (1) make unlawful, or regulate, directly or indirectly, the operation of a risk retention group except that the jurisdiction in which it is chartered may regulate the formation and operation of such a group . . .
>
> (2) require or permit a risk retention group to participate in any insurance insolvency guaranty association to which an insurer licensed in the State is required to belong;
>
> (3) require any insurance policy issued to a risk retention group or any member of the group to be countersigned by an insurance agent or broker residing in that State; or
>
> (4) otherwise, discriminate against a risk retention group or any of its members, except that nothing in this section shall be construed to affect the applicability of State laws generally applicable to persons or corporations.

15 U.S.C. § 3902(a).

But the LRRA preemption has limits that are written into the statute. The so-called police power exception allows the states to impose financial responsibility requirements:

> Subject to the provisions of section 3902(a)(4) of this title relating to discrimination, nothing in this chapter shall be construed to preempt the authority of a State to specify acceptable means of demonstrating financial responsibility where the State has required a demonstration of financial responsibility as a condition for obtaining a license or permit to undertake specified activities. Such means may include or exclude insurance coverage obtained from an admitted insurance

> company, an excess lines company, a risk retention group, or
> any other source regardless of whether coverage is obtained
> directly from an insurance company or through a broker, agent,
> purchasing group, or any other person.

15 U.S.C. § 3905(d). In sum, states may not discriminate against RRGs specifically. But the text of § 3905(d) allows states to establish financial responsibility requirements that would exclude policies from RRGs from serving as acceptable means of demonstrating financial responsibility.

The Seventh Circuit considered LRRA preemption in *Ophthalmic Mutual Insurance Co. v. Musser*, 143 F.3d 1062 (7th Cir. 1998). In that case, the plaintiff Ophthalmic Mutual Insurance Co. was a RRG that wanted to offer health care liability insurance in Wisconsin. But under the financial responsibility statute governing health care liability insurance at the time (the then-current version of Wis. Stat. § 655.23(3)(a)), an out-of-state RRG was not an insurer authorized to do business in this state, and thus a policy written by an out-of-state RRG was not acceptable proof of financial responsibility. The plaintiff sued, alleging that Wisconsin's financial responsibility requirements discriminated against RRGs and were thus preempted by LRRA.

The Seventh Circuit held that Wis. Stat. § 655.23(3)(a) was a valid financial responsibility law that fell within the police power exception in § 3905(d), and thus was not preempted. The Wisconsin statute's language "mirrors the scenario envisioned in the [LRRA's] legislative history and thus fits into the preemption exception contained in § 3905(d)." *Ophthalmic*, 143 F.3d at 1067-68. The court of appeals also held that Wis. Stat. § 655.23(3)(a) did not discriminate against RRGs. According to Seventh Circuit, "what concerned Congress was a state legislature enacting laws *intending to thwart* RRGs." *Id.* at 1069-70. "[W]hile [the Wisconsin statute] most definitely discriminates against *out-of-state*

11

insurers (as Wisconsin has the right to do), and while out-of-state insurers may include RRGs, there is no evidence in the record to indicate that RRGs *as a class* face discrimination under [the Wisconsin statute]." *Id.* at 1070, n.5. (Although plaintiff here is correct that the plaintiff in *Ophthalmic* did not press the discrimination issue on appeal, the court made its conclusions about the discrimination theory perfectly clear.)

*Ophthalmic* held that the financial responsibility requirements applicable to Wisconsin health care liability insurers do not violate the LRRA, despite that those requirements effectively barred RRGs from writing insurance in Wisconsin. The Seventh Circuit's analysis would apply with equal force to the financial responsibility requirements for dwelling contractors, which imposes the identical "an insurer authorized to do business in this state" requirement.

Plaintiff's counterargument relies primarily on *National Warranty Insurance Co. RRG v. Greenfield*, 214 F.3d 1073 (9th Cir. 2000). But, as the Ninth Circuit recognized, its decision was at odds with that of the Seventh Circuit. *Id.* at 1082. Thus, whatever the virtues of the Ninth Circuit's analysis, this court is not at liberty to embrace it. Following *Ophthalmic*, the court concludes that the Department's interpretation of Wis. Stat. § 101.654(2)(a) is not preempted and it does not otherwise violate the LRRA.

## C. Remaining issues

The court will deny Restoration Risk's motion for injunctive relief. To obtain injunctive relief, Restoration must demonstrate: (1) at least some likelihood of success on the merits; (2) the lack of an adequate remedy at law and irreparable harm absent the injunction; (3) that the balance of harms tips in their favor; and (4) that the public interest favors the injunctive relief. *Lucini Italia Co. v. Grappolini*, 288 F.3d 1035, 1038 (7th Cir. 2002). But

Restoration Risk cannot demonstrate any likelihood of success on the merits: its claims under the LRRA fail under the reasoning of *Ophthalmic*, and Restoration Risk has not separately addressed the merits of its equal protection and due process claims. The statutory interpretation issues and the LRRA issues are questions of law that the court has decided. The court understands that Restoration Risk faces hardship under the Department's new interpretation of the statutory financial responsibility requirements. But the court will not order an injunction when Restoration Risk has no chance of success on the merits.

Given the court's decision on the interpretation of Wis. Stat. § 101.654(2)(a) and the LRRA preemption issue, it is not clear to the court how the constitutional claims against Ross, the secretary of the Department of Safety and Professional Services, remain viable. Nevertheless, neither party has moved for judgment on Restoration Risk's constitutional claims, so for now, those claims remain unresolved. If Restoration Risk intends to seek appellate review of this decision, it might be most efficient for the parties to stipulate to dismissal of the constitutional claims. The parties should, jointly if possible, inform the court of their intention to proceed with this case within 10 days of this order.

ORDER

IT IS ORDERED that:

1. Defendants Dave Ross and Trades Credentialing Unit's motion for partial judgment on the pleadings, Dkt. 14, is GRANTED.

2. Plaintiff Restoration Risk Retention Group, Inc.'s motion for partial summary judgment, Dkt. 25, is DENIED.

3. Plaintiff's claims against defendant Trades Credentialing Unit are DISMISSED.

4. Defendant Trades Credentialing Unit is DISMISSED from this case.

5. Plaintiff's motion for injunctive relief, Dkt. 2, is DENIED.

6. The parties must inform the court of their intention to proceed with this case within 10 days of this order.

Entered October 24, 2016.

                              BY THE COURT:

                              /s/

                              _____
                              JAMES D. PETERSON
                              District Judge